**JOHN MARTIN COMPANY, INC., Plaintiff/Appellee,**

v.

**MORSE/DIESEL, INC., Morse/Diesel, Inc., of Illinois, and Leslie Littlefield, Defendants/Appellants.**

Supreme Court of Tennessee, at Knoxville.

Oct. 28, 1991.

Hugh Garner, Garner, Lewis & Prickett, Chattanooga, David M. Meister, and Timothy J. Patenode, Katten, Muchin & Zavis, Chicago, Ill., for defendants-appellants.

American Institute of Architects, Nat. Soc. of Professional Engineers, American Consulting Engineers Council, Tennessee Soc. of Architects, Tennessee Soc. of Professional Engineers, Consulting Engineers of Tennessee, East Tennessee Chapter of the American Institute of Architects, amici curiae.

David N. Garst, Lewis, King, Krieg & Waldrop, Knoxville, for brief of amici curiae.

William T. Alt, Chattanooga, for plaintiff-appellee.

Associated Gen. Contractors of Tennessee and East Tennessee Chapter of the Ass'n of Gen. Contractors, amici curiae.

Dan D. Rhea, Arnett, Draper & Hagood and Wanda Sobieski, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, for brief of amici curiae.

## OPINION

GARY R. WADE, Special Judge.

Permission to appeal to this Court has been granted to the defendants, Morse/Diesel, Inc., Morse/Diesel, Inc., of Illinois, and Leslie Littlefield, under Rule 11 of the Tennessee Rules of Appellate Procedure. The issue is whether a subcontractor who has been fully paid by the owner for the performance of his contractual duties may make a separate claim in tort against a construction manager for economic loss caused by negligent misrepresentations.

We hold that a subcontractor, despite a lack of privity, may make such a claim against the construction manager based upon negligent misrepresentation, whether the negligence is in the form of direction or supervision. The judgment of the Court of Appeals, vacating the grant of summary judgment in favor of the defendant and remanding the cause for trial, is affirmed. Costs are adjudged against the defendant, Morse/Diesel, Inc.

Provident Insurance Company ("Provident") initially contracted with the defendant, Morse/Diesel, Inc., as a consultant to assist in the planning of an addition to its offices in Hamilton County. The defendant reviewed the proposed architectural designs, suggested modifications, and prepared cost estimates for construction.

When the decision was made to proceed with the project, Provident engaged the defendant as construction manager. By the terms of their construction management contract, the defendant was to act in behalf of the owner in the employment of the necessary subcontractors, the coordination of their schedule, and the supervision of their work. The defendant had the specific responsibility to review, consider, and approve the plans and specifications used by the subcontractors in the performance of their tasks. Leslie Littlefield was the defendant's on-site construction superintendent.

The plan of construction was in two phases: first, the substructure, which included excavation of the site and construction of the foundation and basement; and second, the superstructure, which included all construction above street level. The entire project was to be constructed by the "fast track" method. That is, construction began on each phase of the building addition as component architectural plans and specifications were completed and approved.

Provident, through the defendant, entered into a number of contracts with various contractors. On August 19, 1981, the defendant, acting as agent for Provident,

executed a subcontract employing the plaintiff, John Martin and Company, Inc., to provide concrete and rough carpentry for the superstructure. Although not a party to the agreement, the defendant was to supervise and direct the work. As such, the defendant was authorized to act on behalf of Provident in determining the means, techniques, sequences, and procedures for construction. The defendant had the responsibility to review and approve all shop drawings, the plaintiff's subcontractors and suppliers, and plaintiff's daily work progress.

The concrete floors to the superstructure were required to reach specific elevations provided for by the architectural plans. The defendant measured the floor elevations. As the plaintiff poured the concrete, the elevations were consistently low. More concrete was required. As a result, the plaintiff experienced additional costs and delays. The plaintiff claimed the extra labor and material were due to faulty plans. The defendant responded that the need for more concrete was due to the natural sag of the steel which, by the terms of the subcontract, was the responsibility of the plaintiff; its position was that the plaintiff had miscalculated the amount of concrete necessary. In consequence, the defendant refused to approve change orders for the additional concrete. The plaintiff did not finish its work until over a year beyond its contracted completion date.

The plaintiff, seeking compensation for its losses, filed suit against Provident and the defendant on both contractual and tort theories. Eventually, the plaintiff settled with Provident; it received the payments authorized by either the contract or approved change orders. The plaintiff and Provident signed a covenant not to sue.

The trial court granted the defendant's motion for summary judgment based upon its status as agent for Provident. The Eastern Section of the Court of Appeals reversed, holding that the plaintiff's claims of negligent misrepresentation and supervision by the defendant were independent of any liability on the part of Provident; it ruled that Counts Two and Four of the complaint were held to have survived the execution of the plaintiff's covenant not to sue. *John Martin Company, Inc. v. Morse/Diesel, Inc.*, No. 809, 1988 WL 133474 (Tenn.App., December 15, 1988). The question of whether the plaintiff was entitled to claim economic loss in tort was not an issue in the first appeal.

On remand, the defendant filed a supplemental motion for summary judgment on the ground that economic losses are not recoverable for negligence absent privity. The trial court granted the motion. The Court of Appeals again reversed, ruling that economic loss may be recoverable by parties not in privity upon a showing of "negligence, misrepresentation, and justifiable reliance." *John Martin Co., Inc. v. Morse/Diesel, Inc.*, No. 918, 1990 WL 28776 (Tenn.App., March 20, 1990), slip op. at 21. The grant of the defendant's application for permission to appeal is based upon our view that this specific issue is one of first impression in this state.

The defendant's principal argument is that the plaintiff cannot recover on a theory of negligence because any losses were purely commercial in nature. It contends that principles of negligence should not be applied to contract-based interests. The defendant submits that there are sound public policy reasons, not considered by the Court of Appeals, which should preclude recovery for economic losses in the absence of privity. The *amicus curiae* brief in support of the defendant's position argues in favor of the "economic loss doctrine": a general principle that prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant. *See United Textile Workers of America v. Lear Siegler Seating Corp.*, No. 143, 1990 WL 171508 (Tenn.App., November 8, 1990) (APTA filed January 7, 1991). The *amicus* contends that it is a time-honored rule. The only exception, it submits, is in connection with an action for negligent misrepresentation, limited to those instances where the plaintiff has justifiably relied upon misinformation, usually provided by a professional, in determining whether to enter into or participate in a business transaction.

*See* Restatement (2d) of Torts § 552. Because the negligent misrepresentation alleged here is not in regard to "the transaction" but relates to the day-to-day performance of an executed contract, the *amicus* asserts that the doctrine's exception would not apply. To permit this action, it contends, would altogether do away with the economic loss doctrine and would subject architects, engineers, and construction managers to an unlimited number of potential claimants not remotely involved in the original transaction.

The plaintiff submits that the defendant, as construction manager with exclusive control over the project, had the continuing duty to properly supervise and direct. It argues that it had no choice but to rely upon the defendant's negligent misrepresentations in relation to the design and negligent supervision in regard to the construction. An *amicus curiae,* who filed its brief in support of the plaintiff, maintains that the holding of the Court of Appeals is in accordance with the established law of this state and should be sustained based upon public policy reasons. Because this state's lawyers, title examiners, accountants, and surveyors, despite the lack of privity, have all been held responsible for economic losses suffered by their negligence, the plaintiff asserts that no special consideration should be afforded to architects, engineers, or professional construction managers. *See Stinson v. Brand,* 738 S.W.2d 186 (Tenn.1987).

I

This is not a products liability case. In this instance, the theory of recovery is that the defendant negligently supplied information intended for the guidance of others; the plaintiff relied upon the misrepresentation in the performance of his contracted service and experienced business losses as a result. Many of those cases relied upon by the defendant involve claims of product liability in respect to design defects; the losses suffered were caused by defective products, not misguidance or misdirection in the performance of services. *See,* e.g., *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916). The question

here is not one of harm to person or property, but of economic loss.

■ Whether the negligence alleged is based upon misrepresentation or supervision, the applicable law in Tennessee, absent privity, is found in the Restatement (2d) of Torts § 552 (1977):

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in the obtaining or communicating of the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1), is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

By the use of this standard, liability in tort would result when, despite lack of contractual privity between the plaintiff and the defendant,

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; *and*

(2) the defendant supplies faulty information meant to guide others in their business transaction; *and*

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; *and*

(4) the plaintiff justifiably relies upon the information.

■ The defendant is liable only to those, whether in contractual privity or not,

for whose benefit and guidance the information is supplied. The information may be either direct or indirect. In that regard, the foreseeability of use is critical to liability.

Because the misinformation is negligently rather than intentionally supplied, courts have been careful to limit liability to only those whose use of the information is reasonably foreseeable:

> By limiting the liability for negligence of a supplier of information to be used in commercial transactions *to cases in which he manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs,* the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests.

Restatement (2d) of Torts § 552 Comments (1977).

■ Contributory negligence is, of course, a defense to any action based in negligent misrepresentation.

## II

Although there is a split of authority among the states, Tennessee appears to have embraced § 552 of the Restatement (2d) as the guiding principle. In 1962, this Court, citing a number of Tennessee cases, acknowledged the erosion of the privity doctrine in this type of case:

> It is true the old rule was that there was no duty of care upon a defendant to a plaintiff not in privity. *Burkett v. Studebaker Bros. Mfg. Co.,* 126 Tenn. 467, 150 S.W. 421. But it can hardly be said that such a general rule any longer exists. *See, Dunn v. Ralston Purina Company,* 38 Tenn.App. 229, 233, 272 S.W.2d 479....
>
> Such a duty has been imposed and defendant held liable to a plaintiff not in privity in a number of classes of cases, such as that of a supplier of goods or services which, if negligently made or rendered, are "reasonably certain to place life and limb in peril."
>
> Such a duty, and liability for its breach, has also been imposed upon defendants in favor of a plaintiff not in privity in cases of reasonably foreseeable risk of damage to tangible property. *Dunn v. Ralston Purina Company, supra; Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 18 and cases there cited.
>
> [S]uch a duty and consequent liability have been imposed on a defendant in favor of plaintiff not in privity where the risk of harm from negligent performance of a contract was to an intangible interest of such plaintiff. *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425.

*Howell v. Betts,* 211 Tenn. 134, 362 S.W.2d 924, 925–926 (1962) (some citations omitted).

In *Howell,* this Court cited with approval three Tennessee cases involving real estate title abstracters: *Dickel v. Nashville Abstract Co.,* 89 Tenn. 431, 14 S.W. 896 (1890); *Denton v. Nashville Title Co.,* 112 Tenn. 320, 79 S.W. 799 (1904); and *Equitable Building and Loan Association v. Bank of Commerce & Trust Co.,* 118 Tenn. 678, 102 S.W. 901 (1907). The earliest case, *Dickel,* upheld the requirement of privity. In *Denton,* the Court acknowledged that a title company would be liable, absent privity, if the misinformation caused the loss. In *Equitable Building and Loan,* there was no liability because the abstracter had no knowledge that his information would be used for the benefit of the plaintiff; that is, the loss was not reasonably foreseeable.

Despite the recognition of a cause of action absent privity, the holding in *Howell* was in favor of the defendant. A surveyor whose erroneous plat had been used in a sale some 24 years after its preparation was not held liable for the losses to the purchaser of the property:

> On principle and authority, we think the rule of liability cannot be extended to a case like that before us. If these surveyors could be held liable to such an unforeseeable and remote purchaser 24 years after the survey, they might, with equal reason, be held liable to any and all purchasers to the end of time. We think

no duty so broad and no liability so limited should be imposed.

*Id.*, 362 S.W.2d at 926; *see also Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931).

In 1970, this Court permitted an action in tort based upon negligent misrepresentation when there was no privity between the parties. *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970). Former Chief Justice Dyer, speaking on behalf of the Court, cited *Dickel, Denton,* and *Equitable* as denying recovery based upon lack of privity:

> These three cases hold the defendants, in the preparation of the abstracts, owe the duty to the plaintiffs under the contract of employment to act with care. The point is where there was privity, recovery was allowed, and where there was not privity, recovery was denied.

*Id.* 453 S.W.2d at 781–782.

Whether or not the analysis of the rulings in the three prior cases was correct, the decision in *Tartera* clearly dispensed with the privity requirement. While holding a surveyor liable to a buyer of property with whom the surveyor had no contractual relationship, this Court recognized an action in tort based upon negligent misrepresentation:

> We view the action as one in tort determined by the general principles of the law of negligence subject to the normal defenses to such action. While the authorities on the situation presented in this case are meager, we consider that the view expressed in Restatement is sound on principle, and in accord with clear dicta in *Howell v. Betts, supra.*

*Id.* at 784–785.

In *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972), this Court discussed three types of tortious misrepresentation. One related to an action for misrepresentation by a purchaser against a seller or a manufacturer engaged in the business. *See* Restatement (2d) of Torts § 402b; *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966). A second misrepresentation, intentionally or recklessly made, was actually fraud or deceit. 497 S.W.2d at 243. The third type of action, citing § 552 of the Restatement (2d), was that of negligent (or unintentional) misrepresentation. *Id.* at 242–243.

More recently, in *Collins v. Binkley*, 750 S.W.2d 737 (Tenn.1988), this Court held that lack of privity did not bar a suit by a purchaser of real estate against the attorney who had prepared for the seller a deed containing a defective acknowledgment. The Court quoted portions of an opinion written by former Chief Justice Harbison in *Stinson v. Brand*, 738 S.W.2d 186, 190–191 (Tenn.1987), a case decided one year before:

> [I]n the case of *Tartera v. Palumbo*, this Court adopted the principles later approved by the American Law Institute in Restatement (Second) of Torts 2d, § 552 (1977) in connection with the liability of business or professional persons who negligently supply false information for the guidance of others in their business transactions. These principles of course, could apply to attorneys as well as to land surveyors, accountants, or title companies.
>
> . . . .
>
> And even if no attorney-client relationship existed or was intended, [the attorneys] could be liable for negligence under the principles of the *Tartera* case. . . .

750 S.W.2d at 738–739 (citation omitted).

■ Because this Court has previously dispensed with privity as a prerequisite for actions in tort based upon negligent misrepresentation against title examiners, surveyors, and attorneys, the rule must extend to other professions whose business is to supply technical information for the guidance of others:

> The standard of care applicable to the conduct of audits by public accountants is the same as that applied to doctors, lawyers, architects, engineers, and others furnishing skilled services for compensation and that standard requires reasonable care and competence therein.

*Vineyard v. Timmons*, 486 S.W.2d 914, 920 (Tenn.App.1972) (privity existed as

plaintiff was client of defendant accountant); *cf. Bethlehem Steel Corp. v. Ernst & Whinney*, No. 861, 1989 WL 139701 (Tenn. App., November 21, 1989) (distinguishing *Vineyard v. Timmons*) (APTA granted May 14, 1990).

The Restatement makes no distinction based upon the nature of the profession. Neither do we.

### III

The record in this case is voluminous. Briefing has been extensive both by the parties and by their supportive professional organizations. We are grateful, of course, for the assistance provided by the *amicus curiae* briefs. Much is made, however, about whether Tennessee falls among the majority or the minority on the view that a

cause of action exists in tort even in the absence of privity between the parties. Persuasive arguments, both to limit and extend the bounds of liability, are made on grounds of public policy. *See Smith v. Gore*, 728 S.W.2d 738 (Tenn.1987); Tenn. Code Ann. § 29–34–104.

We have examined the competing views. Our conclusion is that there is no clear majority; instead, we find a split of authority among the states. A number of cases from other states have held that an action may be maintained against an engineer, architect, contractor or other design professional despite the lack of contractual privity between the parties.[1] A recent example is in *Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 299 S.C. 335, 384 S.E.2d 730 (1989). In that case, where a home buyer

---

1. *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496 (Ala.1984) (subcontractor may recover against architect); *Donnelly Const. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984) (architect liable on negligence theory to contractor for increased cost of construction due to error in plans and specifications); *Carroll–Boone Water Dist. v. M & P Equip. Co.*, 280 Ark. 560, 661 S.W.2d 345 (1983) (contractor may recover against engineer); *United States, ex rel. Los Angeles Testing Laboratory v. Rogers & Rogers*, 161 F.Supp. 132 (S.D.Cal.1958) (contractor may recover against architect); *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973) (contractor may recover against architect or engineer); *Normoyle–Berg & Assoc., Inc. v. Village of Deer Creek*, 39 Ill.App.3d 744, 350 N.E.2d 559 (1976) (contractor may recover against engineer); *Gurtler, Hebert & Co., Inc. v. Weyland Machine Shop, Inc.*, 405 So.2d 660 (La.App.1981), *cert. denied*, 410 So.2d 1130 (La.1982) (subcontractor may assert third-party claim against architect); *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 222 N.E.2d 752 (1967) (contractor may recover against engineer); *Bacco Const. Co. v. American Colloid Co.*, 148 Mich.App. 397, 384 N.W.2d 427 (contractor may recover against engineer); *Owen v. Dodd*, 431 F.Supp. 1239 (N.D.Miss.1977) (contractor may recover against architect); *Waldor Pump & Equipment Co. v. Orr–Schelen–Mayeron & Assoc., Inc.*, 386 N.W.2d 375 (Minn.App.1986) (subcontractor may recover against engineer); *Conforti & Eisele, Inc. v. John C. Morris Assoc.*, 175 N.J.Super. 341, 418 A.2d 1290 (1980) *aff'd* 199 N.J.Super. 498, 489 A.2d 1233 (1985) (contractor may recover against design professional); *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989) (owner may recover against consulting engineer); *Davidson & Jones, Inc., v. New Hanover County*, 41 N.C.App. 661,

255 S.E.2d 580, *cert. denied*, 298 N.C. 295, 259 S.E.2d 911 (1979) (architect, in absence of privity of contract, may be sued by general contractor or subcontractor for economic loss foreseeably resulting from architect's breach of duty of due care in performance of contract with owner); *Forte Bros, Inc. v. National Amusement, Inc.*, 525 A.2d 1301 (R.I.1987) (contractor may recover against architect); *Associated Architects & Engineers, Inc. v. Lubbock Glass & Mirror Co.*, 422 S.W.2d 942 (Tex.Civ.App.1967) (subcontractor may recover against architect); *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F.Supp. 416 (E.D.Wash.1976) (subcontractor may recover against architect); *Vonasek v. Hirsch & Stevens, Inc.*, 65 Wis.2d 1, 221 N.W.2d 815 (1974) (design professional owes a common law duty of care to the general contractor, subcontractor, or contractor's surety); *Shoffner Indust., Inc. v. W.B. Lloyd Const. Co.*, 42 N.C.App. 259, 257 S.E.2d 50, *cert. denied* 298 N.C. 296, 259 S.E.2d 301 (1979) (contractor may recover against architect); *Magnolia Construction Co. v. Mississippi Gulf South Engineers, Inc.*, 518 So.2d 1194 (Miss.1988) (architect owes duty to contractor); *National Sand, Inc. v. Nagel Construction, Inc.*, 182 Mich.App. 327, 451 N.W.2d 618, *cert. denied* 434 Mich. 1214, 456 N.W.2d 390 (1990) (subcontractor may maintain action against engineers); *Guardian Const. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del.Super.1990) (lack of contractual privity between design engineer and general contractor was not fatal to negligence and negligent misrepresentation claims against design engineer, notwithstanding fact that contractor and subcontractor were seeking purely economic damages); *Wolther v. Schaarschmidt*, 738 P.2d 25 (Colo.App.1986) (purchaser of home may recover against engineer). *But see* House & Bell "The Economic Loss Rule: A Fair Balancing of Interests," 11 *The Construction Lawyer* (April, 1991).

was permitted to sue the builder despite a lack of privity, the Supreme Court of South Carolina indicated its disapproval of an intermediate court's decision one year earlier which had recognized the economic loss doctrine as a bar to the suit.[2] Other states have adhered to the traditional view that purely economic losses cannot be recovered in tort absent privity.[3]

The position this state has adopted, as recognized by the Court of Appeals decision, is based in great measure upon cases authored years ago by former Justice Benjamin Cardozo. In *Glanzer v. Shepard,* he wrote as follows:

> We think the law imposes a duty toward buyer as well as seller in the situation [where the buyer purchases in reliance upon a weight certificate by a third party]. The plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. Bech Van Siclen & Co. [the seller] ordered, but Glanzer Brothers [the buyers], were to use.
>
> ....
>
> We state the defendants' obligation, therefore, in terms, not of contract merely, but a duty.... Diligence was owing, not only to him who ordered, but to him also who relied.

*Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275, 275–277 (1922).

In *Ultramares,* a subsequent opinion, Cardozo acknowledged that an action in tort for negligent misrepresentation must have its limits:

> Here was a case [*Glanzer*] where the transmission of the certificate ... was not merely one possibility among many,

but the "end and aim of the transaction...." The intimacy of the resulting nexus is attested by the fact that, after stating the case in terms of legal duty, we went on to point out that ... we could reach the same result by stating it in terms of contract. The bond was so close as to approach that of privity, if not completely one with it. Not so in the case at hand.

*Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 445–446 (citations omitted).

 Years ago, *Ultramares* recognized the potential pitfalls of an unlimited action in tort based upon negligent misrepresentation in commercial transactions. The burden is always upon the plaintiff to establish that the supplier violated his duty to exercise due care and competence in obtaining or communicating the information. Foreseeability by the provider of the information and reliance by the user of the information are important safeguards. Negligence by the user of the information may be a bar to recovery. Each of these principles provides reasonable protection against the proliferation of litigation in this area of tort. The Restatement (2d) provisions adopted in *Tartera* suggest a properly balanced approach. The rule extends to the professional construction manager whose duty is to supply direction and supervision to subcontractors employed by the owner.

 In summary, whether the action for economic loss is based upon negligent supervision or negligent misrepresentation, § 552 of the Restatement (2d) of Torts is the applicable standard in this state. Privity is not a prerequisite. The Court of Appeals is affirmed. The summary judgment in favor of the defendant is

---

**2.** *Carolina Winds Owners' Ass'n., Inc. v. Joe Harden Builder, Inc.,* 297 S.C. 74, 374 S.E.2d 897 (S.C.App.1988) (overruling recognized in *Beachwalk Villas Condominium Ass'n., Inc. v. Martin,* 406 S.E.2d 372 (S.C.1991).

**3.** *Floor Craft Floor Covering, Inc. v. Parma Community Hospital Ass'n.,* 54 Ohio St.3d 1, 560 N.E.2d 206 (1990) (in absence of privity of contract between parties, there is no duty to exercise reasonable care to avoid economic losses to

another); *Spivack v. Berks Ridge Corp., Inc.,* 402 Pa.Super. 73, 586 A.2d 402 (1990) (economic losses may not be recovered in tort (negligence) absent physical injury or property damage); *R.H. Macy & Co., Inc. v. Williams Tile & Terrazzo Co., Inc.,* 585 F.Supp. 175 (N.D.Ga.1984) (based on Georgia's privity statute); *Blake Construction Co., Inc. v. Alley,* 233 Va. 31, 353 S.E.2d 724 (1987) (in action between contractor and architect, purely economic losses cannot be recovered in tort absent privity of contract).

vacated and the cause is remanded for trial.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.