IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**ARDIE TRICE,**

      Plaintiff-Appellee,

Vs.

C.A. No. 02A01-9708-CV-00195
Chester Circuit No. 4072

**JOHNNY LEE KELLY,
TERRY SELLERS, and
DAVID HALL,**

      Defendants-Appellants.

FILED

**June 12, 1998**

**Cecil Crowson, Jr.**
~~Appellate Court Clerk~~

FROM THE CHESTER COUNTY CIRCUIT COURT
THE HONORABLE WHIT LAFON, JUDGE

Nathan B. Pride of Jackson
For Appellee

David A. Riddick of Jackson
For Appellant, Hall

*VACATED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This appeal involves a suit brought by a property owner against a land surveyor for damages resulting from the unlawful cutting of timber. Plaintiff/Appellee, Ardie Trice (Trice), sued his adjacent landowner, Johnny Lee Kelly (Kelly), and Kelly's timber cutter, Defendant,

Terry Sellers (Sellers), for damages resulting from the unlawful cutting of his timber. Kelly and Sellers both answered the complaint and filed cross-claims against each other seeking indemnification and other damages. They also filed third party complaints against the land surveyor, David Hall. After Hall was brought in as a third party defendant, Trice was granted permission to amend his complaint and bring Hall in as a defendant. The amended complaint alleges that Hall performed a faulty survey improperly designating the line between Kelly and Trice and that because of his failure to mark the correct line, the timber was cut on Trice's property instead of Kelly's property. The complaint seeks damages against Hall as provided by T.C.A. § 43-28-312 (1993).

Issues were drawn on the various pleadings.[1] Trice's claim against Sellers and Kelly was compromised and settled before a trial, and the case proceeded to trial without a jury against Defendant Hall.

Trice is an owner of a tract of land adjacent to land owned by Kelly. Kelly's land was previously owned by Robert and Penny Hill. In 1993, Hill, who was selling the land to Kelly, hired Hall, a professional surveyor, to survey the property and identify the boundaries of the tract.

Hall testified that in making the survey it was necessary to establish a traverse line, which ran in the area of the Kelly/Trice boundary, and for that purpose used red flags on the undergrowth. Traverse line flags are placed differently than boundary line flags. These flags were not removed when the survey was completed. Hall's survey plat indicates that the corners of the boundary are marked, and does not indicate that the boundary line has been marked on the ground. Kelly testified that he does not remember receiving a copy of Hall's survey, nor did he ever talk to Hall prior to the timber cutting.

Shortly after the property was conveyed to Kelly, Kelly arranged with Sellers to cut timber from the property. Without consulting Hall or a copy of Hall's survey, Kelly assumed that the red flags left from Hall's survey marked the boundary of Kelly's land and advised Sellers as such. Sellers testified that he was not shown a copy of the survey, that he never talked to Hall before the cutting, and that he relied on Kelly's instruction as to the boundary lines.

---

[1] A detailed description of the various pleadings is unnecessary because the only parties to the appeal are the Plaintiff, Trice, and the Defendant, Hall.

2

Following a bench trial, the trial court found that Hall was negligent and apportioned sixty (60%) percent of the fault to Hall, twenty (20%) percent to Kelly and twenty (20%) percent to Sellers. Damages were doubled in accordance with T.C.A. § 43-28-312 (a)(1). Judgment was entered against Hall for $5,802.60 and, because of the settlement as to Kelly and Sellers, the action against them was dismissed with prejudice.

On appeal, Hall asserts that the trial court erred by finding him liable because he was not negligent, nor did he make any representation which was justifiably relied upon by plaintiff.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Tennessee law recognizes that under certain circumstances a third party may hold a surveyor liable on a theory of negligent misrepresentation. *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970). In *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997), our Supreme Court discussed essential elements of a negligent misrepresentation action filed against a professional:

> Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn.1991). Section 552 provides, in pertinent part, as follows:
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Restatement (Second) of Torts*, § 552 (1977) (emphasis added).

In discussing the requirements for recovery under Section 552, this Court has stated that liability in tort will result, despite the lack of contractual privity between the plaintiff and defendant, when,

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information *meant to guide others in their business transactions*; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*John Martin Co.*, 819 S.W.2d at 431 (emphasis added); *accord Ritter*, 912 S.W.2d at 130.

*Robinson*, 952 S.W.2d at 427.

As many as three of the aforementioned elements are not satisfied in the present case. In order for Hall to be liable in the instant case, he must have furnished to the plaintiff "faulty information." *Id.* Trice presented no proof at trial demonstrating that Hall's survey was inaccurate. Testifying as an expert on behalf of Trice, Eddie Coleman (Coleman) expressly stated that although he had not personally surveyed the land, he did not observe any problem with Hall's survey plat. Coleman stated that marking traverse lines, as was done in this case, is necessary and customary in the industry. According to Coleman, Hall's survey plat did not indicate that a boundary line had been marked on the property, and marking a boundary line on the property would not be necessary in the absence of a request by the customer.[2]

When questioned by Trice's counsel at trial, Coleman testified as follows:

Q    Now, after that's done and the points are found, you

---

[2] There is no suggestion in the record that Penny Hill requested Hall to mark the boundary line.

4

remove those traverse points?

A      I'd like to tell you that we do that, but sometimes we forget to do that and sometimes we fail to do that.

Q      Is that right or wrong not to do that?

A      Ah, there's a reason why, I guess, two reasons why we don't remove all of our access surveying, other than what's on the boundary line. One of them is, sometimes we feel like we may need to use those points somewhere in the future. And so we keep them, where we can come back and readily find them and we might use them to start off another survey or to identify some other work. And, then the other is, ah, oh, it's just a matter of time of getting back and taking them down.

Q      Is 5 months a long time or a short period of time?

A      Well, for the removal of a traverse line?

Q      Yes.

A      I would say it's sufficient time. If you had an intent of removing a random traverse line, it's sufficient time to get it down. I'm sure that I've got some that are probably still in existence. I hope it hasn't caused the problems it's caused here today.

Q      But, they can cause problems?

A      Evidently they can, yes, sir.

Q      That's why you go back and try to take them?

A      Well, yes, sir. And, try not to leave it too obvious that you've done something different from the location of the boundary [sic] lines . . . . .

Q      Because lay people such as Mr. Kelly and Mr. Trice would rely on those as being . . . . . .

A      Well, they could. There could be situations or stipulations where that it would be obvious that they shouldn't be relied upon, but I could see where someone could do that, yes.

Significantly, Coleman did not testify that Hall had deviated from the standard of care required of surveyors under the circumstances of this case. Moreover Coleman noted that Hall's survey plat indicated the boundary line was a straight line. He testified that the deviation of the flags from a straight line should alert a person "that there is something wrong."

Essentially, Trice attempts to assert that Hall failed to "exercise reasonable care in . . . communicating the information," and that Kelly and Sellers "justifiably reli[ed]" on the information. *Robinson*, 952 S.W.2d at 427. As mentioned previously, Trice has failed to

5

demonstrate that the information from Hall's survey is false. There is no proof that Hall breached the standard of care in his profession by not retrieving the flags. In any event, the preponderance of the evidence in the record indicates that Kelly and Sellers were not justified in relying on the flags left from Hall's survey. The flags formed an uneven line, and neither Kelly nor Sellers made any attempt to consult Hall or his survey plat. Instead, they blindly assumed that the flags marked the boundary line. Such reliance is particularly unjustified in light of the fact that Sellers is a professional timber cutter. Moreover, there was no reliance by Trice on any representation by Hall. The standard articulated in **Robinson, supra,** requires that the "plaintiff justifiably rel[y] upon the information." **Id.** While Trice sustained damages, he did not sustain damage as a result of **his** personal reliance on Hall's survey. Therefore, the second, third, and fourth prongs of the **Robinson** standard are not satisfied. **Id.**

Our Supreme Court has recognized the strict parameters that should be observed in cases involving negligent misrepresentation. In **John Martin Co. v. Morse/Diesel, Inc.**, 819 S.W.2d 428 (Tenn. 1991), the Court said:

> Years ago, *Ultramares* recognized the potential pitfalls of an unlimited action in tort based upon negligent misrepresentation in commercial transactions. The burden is always upon the plaintiff to establish that the supplier violated his duty to exercise due care and competence in obtaining or communicating the information. Foreseeability by the provider of the information and reliance by the user of the information are important safeguards. Negligence by the user of the information may be a bar to recovery. Each of these principles provides reasonable protection against the proliferation of litigation in this area of tort. The Restatement (2d) provisions adopted in *Tartera* suggest a properly balanced approach.

**Id.** at 435 (citing **Ultramares Corp. v. Touche**, 174 N.E. 441 (N.Y. 1931); **Tartera v. Palumbo**, 224 Tenn. 262, 453 S.W.2d 780 (1970)).

In sum, the evidence preponderates against the finding that Hall provided false information in a business transaction which was justifiably relied upon by either Kelly, Sellers, or Trice. Therefore, Hall was not guilty of negligent misrepresentation, and the trial court erred in awarding judgment against him. Accordingly, the judgment of the trial court against Hall is vacated, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against Appellee.

_____
**W. FRANK CRAWFORD,**

                                          **PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

7