IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2018 Session

## C. BRUCE BATTEN v. COMMUNITY TRUST AND BANKING COMPANY ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 10C366        Ward Jeffrey Hollingsworth, Judge**

———————————————————

**No. E2017-00279-COA-R3-CV**

———————————————————

J. STEVEN STAFFORD, P.J., W.S., dissenting in part,

I concur in the majority opinion's result with regard to Batten's entitlement to the severance package and with regard to the award of attorney's fees to Bank. However, I must dissent from the majority's conclusion that the trial court correctly granted summary judgment to Attorney Edge on Batten's negligent misrepresentation claim.

As discussed by the majority, the alleged representation at issue in this case was that Attorney Edge was unaware of anything that would affect Batten's ability to receive his negotiated severance benefits if he tendered his resignation in December 2009. According to Batten, Attorney Edge's representation was false because Attorney Edge was at that time aware of several facts that could undermine Batten's ability to receive the severance package.

As the majority correctly notes, Tennessee has long held that attorneys may be liable for negligent misrepresentations even in the absence of an attorney-client relationship. *See, e.g., **Collins v. Binkley**,* 750 S.W.2d 737, 739 (Tenn. 1988); ***Stinson v. Brand***, 738 S.W.2d 186, 190 (Tenn. 1987). I also agree with the majority's conclusion that the facts, taken in the light most favorable to Batten, show that Attorney Edge's misrepresentation involved an opinion based on existing facts, which is cognizable under Tennessee's negligent misrepresentation jurisprudence.

I depart from the majority opinion, however, with regard to its conclusions as to the intention/reliance and business transaction/pecuniary interest elements of the tort of negligent misrepresentation. I begin with the issue of reliance. Under the *Restatement (Second) of Torts*, liability is limited to the loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Restatement (Second) of Torts* § 552(2) (1977) (noting an exception not present in this case). The purpose of this rule is to limit the threat of liability "by narrowing the class of potential claimants and requiring that any claimant justifiably rely on the alleged negligent misrepresentation." ***McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests***, 991 S.W.2d 787, 793–94 (Tex. 1999). As the Texas Supreme Court explained,

> This formulation limits liability to situations in which the attorney who provides the information is aware of the nonclient and intends that the nonclient rely on the information. In other words, a section 552 cause of action is available only when information is transferred by an attorney to a known party for a known purpose.

*Id.* at 794. Thus, "foreseeability of use is critical to liability." ***John Martin Co. v. Morse/Diesel, Inc.***, 819 S.W.2d 428, 432 (Tenn. 1991).

Taking the facts in the light most favorable to Batten, it is clear that Attorney Edge communicated the information to Batten with knowledge of the purpose for which he was seeking the information. This is not the situation where a party prepares a legal opinion for a client and then the information is used by a peripheral nonclient unforeseen by the advising attorney. Here, despite her representation of Bank, Attorney Edge provided advice directly to Batten to guide his decision regarding his employment. Moreover, Attorney Edge drafted the letter that Batten ultimately used to resign his position. Attorney Edge's decision to "so far involve[]" herself in this transaction by writing Batten's resignation letter tends to support Batten's claim that Attorney Edge intended that he rely upon her advice. *See* ***Stinson v. Brand***, 738 S.W.2d 186, 190 (Tenn. 1987) (allowing a negligent misrepresentation claim against attorneys where they "so far involved themselves in the transaction that a trier of fact could find that they were representing multiple interests"). Moreover, given the direct contact between Attorney Edge and Batten, it was entirely foreseeable that he would rely on her advice. As such, it does not appear that Attorney Edge has presented sufficient evidence to show that it was unforeseeable that Batten would rely on her advice.

With regard to this factor, the majority also concludes that Batten's reliance on Attorney Edge's advice was not justifiable where he was a man of business and Attorney Edge advised him to seek his own counsel. I do not dispute that these factors may support the view that Batten's reliance was not justifiable. I cannot conclude, however, that

Attorney Edge has shown that she is entitled to summary judgment as to this element. "Whether the plaintiff's reliance on a representation was reasonable is a question of fact." ***Goodall v. Akers***, No. M2010-01584-COA-R3-CV, 2011 WL 721494, at *3 (Tenn. Ct. App. Mar. 1, 2011) (citing ***City State Bank v. Dean Witter Reynolds, Inc.***, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996)). In order to determine this issue, a number of factors must be considered, including

> (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation.

***Pitz v. Woodruff***, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *10 (Tenn. Ct. App. Dec. 17, 2004).

I agree that some factors appear to weigh in favor of a finding that reliance was not justified, including Batten's business experience and Attorney Edge's admonition that he "may" need to seek independent counsel. Other facts, however, show that the analysis is not so clear cut. For example, the predicating situation in this case is Batten's alleged lack of competence in running the Bank. Moreover, the record shows that Batten was the person to originally engage Attorney Edge on behalf of Bank. For her part, Attorney Edge had considerable experience in banking related legal issues and specifically golden parachute regulations—presumably more experience than Batten, or there would have been no need to hire outside counsel. Moreover, Attorney Edge later agreed by email to keep some of Batten's communications with her confidential from her actual client, Bank.

Summary judgment is not a substitute for trial. ***Brooks Cotton Co. v. Williams***, 381 S.W.3d 414, 419 (Tenn. Ct. App. 2012) (quoting ***EVCO Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975)). The purpose of summary judgment is not to weigh the evidence or to draw inferences from the facts. ***Id.*** (quoting ***Downs v. Bush***, 263 S.W.3d 812, 815 (Tenn. 2008)). Instead, summary judgment is only appropriate where "the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion[.]" ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). "A motion for summary judgment should be denied if there is any doubt regarding whether a genuine issue of fact exists." ***Id.*** Therefore, "[i]f reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists" and summary judgment is inappropriate. ***Id.*** Here, the facts do not lead to only one conclusion regarding whether Batten's reliance on Attorney Edge's alleged misrepresentation was justified. In my view, a reasonable juror looking to these facts could conclude that Batten was justified in relying on Attorney Edge's

representations. As such, I cannot conclude that Attorney Edge negated the reliance element of Batten's negligent misrepresentation claim.

I also cannot agree with the majority's conclusion that Attorney Edge's alleged misrepresentation is not actionable because the "business transaction" element was not met in this case. As the majority notes, this element essentially has two prongs: (1) the misrepresentation must be made "for the guidance of others in their business transactions"; and (2) the defendant must have made the misrepresentation "in the course of his [or her] business, profession or employment." *Allen v. Steele*, 252 P.3d 476, 483 (Colo. 2011). The majority holds that neither element is met because Attorney Edge merely gave gratuitous help to Batten on a "personal matter." I respectfully disagree with both conclusions.

I begin with the question of whether Attorney Edge's advice was given only gratuitously, that is without any pecuniary interest. As an initial matter, I must note that the *Restatement (Second) of Torts* states that this element is met where the defendant provides the information "in the course of his business, profession or employment, *or* in any other transaction in which he has a pecuniary interest[.]" *Restatement (Second) of Torts* § 552(1) (emphasis added); *see Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428 (Tenn. 1991)) (defining this element as requiring that "the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest"). I concede that a comment to the *Restatement* indeed states that the rule "applies only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it." *Restatement (Second) of Torts* § 552(1) cmt. c. Although comment d further invokes the pecuniary interest rule, respectfully, the portion quoted by the majority opinion omits considerable commentary relevant to the analysis in this case. In full, comment d states that

> The defendant's pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied. *It may, however, be of a more indirect character.* Thus the officers of a corporation, although they receive no personal consideration for giving information concerning its affairs, may have a pecuniary interest in its transactions, since they stand to profit indirectly from them, and an agent who expects to receive a commission on a sale may have such an interest in it although he sells nothing.
> *The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at*

*the time.* It is not, however, conclusive. But when one who is engaged in a business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend whom he meets on the street, or what is commonly called a "curbstone opinion," it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous. The recipient of the information is not justified in expecting that his informant will exercise the care and skill that is necessary to insure a correct opinion and is only justified in expecting that the opinion will be an honest one.

*Restatement (Second) of Torts* § 552 cmt. d (emphasis added). Thus, omitted from the majority's discussion of comment d is that the defendant's pecuniary interest may be indirect and may be present where the information is given in the course of "defendant's business, profession, or employment." ***Id.***

There is no question that Attorney Edge was acting in the course of her profession and employment when she allegedly advised Batten that his severance package was not under threat. Indeed, the representation did not occur casually on the "curbstone" but in the context of Attorney Edge's representation of Bank over the course of many conversations. Moreover, nothing in the record indicates that Attorney Edge was providing her services to Bank without payment; thus, her interest in the transaction, though indirect, was not purely gratuitous. Again, summary judgment should only be granted where the undisputed facts lead only to a single conclusion. ***Green***, 293 S.W.3d at 514. Here, given that Attorney Edge was employed by Bank in the usual scope of her business and profession and the alleged misrepresentation involved an obligation to be paid by Bank, a reasonable juror could conclude that Attorney Edge had a sufficiently indirect pecuniary interest in the transaction in which she advised Batten. As such, I cannot agree that Attorney Edge has shown that Batten is unable to prove this prong of his negligent misrepresentation claim.

I also cannot agree that Attorney Edge's advice involves only a personal matter. Rather, the advice was related to Batten's own "business transaction" as required to be cognizable as a negligent misrepresentation. As noted by the caselaw cited by the majority opinion, the term is generally defined as "a particular occupation or employment habitually engaged in for livelihood or gain[.]" ***Allen***, 252 P.3d at 483. There is no dispute that Batten was employed as a banker with Bank for approximately eight years. Further, the advice in question related to his continued employment and the benefits to which he was entitled from that employment.

The situation is therefore not analogous with ***Robinson v. Omer***, 952 S.W.2d 423 (Tenn. 1997), wherein the advice "in no way, was related to a commercial or business transaction" but rather involved a favor by a third-party to videotape another individual's "sexual encounters." ***Id.*** at 428. Thus, ***Robinson*** involved exactly the type of "casual and

offhand opinion" that is not actionable under the *Restatement (Second) of Torts*. Here, however, Attorney Edge was engaged to represent Bank's interest in the regular course of her business and profession. During that engagement, she allegedly supplied inaccurate information to Batten that guided him in his employment decision with Bank. The information provided by Attorney Edge related directly to whether Batten would be entitled to certain negotiated benefits were he to tender his resignation on a certain date. Any holding that no reasonable juror could find that this advice related to a business transaction is therefore, respectfully, misguided.

As a final matter, I note that the trial court concluded that Batten's negligent misrepresentation claim failed on the sole basis that Attorney Edge's alleged representation concerned future events. The majority opinion rightly rejects that conclusion. Although the majority has chosen to address other elements of the negligent misrepresentation claim, as have I in an effort to respond to the majority's conclusions, the trial court's order simply does not address these particular elements. Moreover, while reliance is addressed in Attorney Edge's brief, neither party substantively addresses the question of whether the alleged misrepresentation involved a business transaction as necessary to be cognizable as a negligent misrepresentation. As such, though I follow the majority's lead to discuss the additional elements, I question the wisdom of addressing these issues without allowing the parties and the trial court an opportunity to properly address these elements in the first instance. *See Whalum v. Shelby Cty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *3 (Tenn. Ct. App. Sept. 30, 2014) (citing *Reid v. Reid*, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012)) ("[W]e are constrained to only review those issues that have been decided by the trial court in the first instance."). As such, I am also of the opinion that any additional arguments as to this claim raised by Attorney Edge in her brief should be addressed first to the trial court.

Based on the foregoing, I cannot conclude that Attorney Edge has met her burden to either affirmatively negate an essential element of Batten's negligent misrepresentation claim or demonstrate that Batten's evidence at the summary judgment stage is insufficient to establish an essential element of the claim. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). As such, it is my view that it was error to grant summary judgment on this claim. Consequently, I respectfully dissent from the majority's decision to affirm the trial court's ruling with regard to negligent misrepresentation.

_____
J. STEVEN STAFFORD, JUDGE